# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DENISE SNYDER, | ) | CASE NO.  1:19-cv-770 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| DEFENDANT. | ) | |

| | | |
|---|---|---|
| BRITTANY BENTLEY, | ) | CASE NO.  1:19-cv-680 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the joint motion of plaintiffs Brittany Bentley ("Bentley") and Denise Snyder ("Snyder") for partial summary judgment[1] pursuant to Fed. R. Civ.

---

[1] Plaintiffs' separately filed actions arise out of the same vehicular accident which resulted in two fatalities. (Case No. 1:19-cv-680 ("Bentley Case") and Case No. 1:19-cv-770 ("Snyder Case").) Bentley brings her action on behalf of herself and as administrator of decedent W.B., a minor. Snyder brings her action as administrator of the estate of decedent Bryan Bargar ("Bargar"). The Bentley Case and the Snyder Case are consolidated for purposes of discovery and trial as to liability. (*See* Minutes of Proceedings August 27, 2019.) Plaintiffs' motion, as well as defendant United States of America's ("Defendant" or "USA") response and plaintiffs' reply are identical in both cases but separately filed in each case. For the sake of simplicity and clarity, the Court's reference to motion-related documents herein are to the documents filed in the Snyder Case.

P. 56. (Doc. No. 46 ["Mot."]², Doc. No. 47 (Memorandum in Support of Motion ["Mem."]³).) Defendant opposed the motion (Doc. No. 53-1 ["Opp."]⁴), and plaintiffs' replied (Doc. No. 56 ["Reply"]⁵.) For the reasons that follow, plaintiffs' motion for partial summary judgment is denied.

## I. BACKGROUND

The basic facts underlying these consolidated cases arise from a vehicular accident in Ravenna, Ohio on September 10, 2016. On that date, Ohio National Guard member Jeremy Taylor ("Taylor") and other guardsmen were traveling from the Camp Perry Training Site in Port Clinton, Ohio to Camp Ravenna Training Center in Ravenna, Ohio after completing Individual Weapons Qualification at Camp Perry. Taylor was driving a high mobility multi-purpose wheeled vehicle ("HMMWV"). On that same date, Bargar was also on the road driving a KIA Optima ("KIA") and W.B. was a passenger. At approximately 6:00 p.m., the KIA and HMMWV were traveling on State Route 14 in opposite directions near Ravenna, Ohio. The HMMWV Taylor was driving crossed the center line and collided head-on with the KIA, and Bargar and W.B. suffered fatal injuries in the collision. (*See* Bentley Case, Doc. No. 1 (Complaint) ¶¶ 8-12; Doc. No. 16 (Answer) ¶¶ 8-12; Snyder Case Doc. No. 1 (Complaint) ¶¶ 16-78; Doc. No. 7 (Answer) ¶¶ 16-78.)

In June 2018, both Bentley and Snyder filed administrative tort claims with the United States Army for the wrongful deaths of W.B. and Bargar, respectively. After six months passed, their claims were unresolved and Bentley and Snyder filed their respective actions in federal court pursuant to 28 U.S.C. § 2675. (*See* Bentley Case Complaint ¶¶ 15-17; Answer ¶¶ 15-17; Snyder Case Complaint ¶¶ 13-14; Answer ¶¶ 13-14.)

The foregoing is a brief summary of the basic background facts of this case which are not

---

² Bentley Case, Doc. No. 62.

³ Bentley Case, Doc. No. 63.

⁴ Bentley Case, Doc. No. 79.

⁵ Bentley Case, Doc. No. 75.

in dispute. Additional facts will be discussed in greater detail as appropriate and necessary to the Court's analysis of plaintiffs' motion.

## II. DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution affects the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

The moving party must provide evidence to the court that demonstrates the absence of a genuine dispute as to any material fact. Once the moving party meets this initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250. The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex*, 477 U.S. at 324. The Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962); *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008) ("[T]he district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party.") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Summary judgment is only appropriate when the record, "'taken as a whole could not lead a

3

rational trier of fact to find for the non-moving party.'" *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (quoting *Mitsushita*, 475 U.S. at 587).

The district court's review on summary judgment is a threshold inquiry to determine whether there is the need for a trial due to genuine factual issues that must be resolved by a finder of fact because those issues may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) (quoting *Anderson)*.

**B. The Federal Tort Claims Act**

Plaintiffs bring their actions against defendant pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*. "Under the FTCA, the United States has consented to be sued for [tort claims] caused by the negligence of government employees acting within the scope of their employment." *French v. United States*, 195 F. Supp. 3d 947, 952–53 (N.D. Ohio 2016) (citing *Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392, 395 (6th Cir. 2004) (citing *Rosebush v. United States*, 119 F.3d 438, 440 (6th Cir. 1997))). The USA is only liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances" in accordance with the law of the place where that act or omission occurred. 28 U.S.C. § 2674; 28 U.S.C. § 1346(b)(1); *Premo v. United States,* 599 F.3d 540, 545 (6th Cir. 2010). The events at issue here occurred in Ohio and, therefore, defendant's liability is determined in accordance with Ohio law.

Plaintiffs allege that Taylor was negligent per se when he crossed the center line on State Route 14 and failed to maintain control of his vehicle in violation of Ohio Rev. Code § 4511.25 and § 4511.202, and those violations caused the deaths of W.B. and Barger. Both plaintiffs bring

4

a claim under Ohio's wrongful death statute, Ohio Rev. Code § 2125.01 et seq., and Snyder also brings a survivorship claim pursuant to Ohio Rev. Code § 2305.21. (*See* Bentley Case Complaint ¶¶ 19-23; Snyder Case Complaint ¶¶ 99-111.)

**C. Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs' motion seeks summary judgment on six specific issues:[6]

(1) Taylor was negligent per se under Ohio Rev. Code § 4511.25(A) and § 4511.202(A) in driving left of center and failing to maintain control over the HMMWV he was operating, respectively;
(2) Taylor's violations of the above-listed statutory provisions were not excused by a sudden emergency;
(3) The crash was the direct cause of Bargar's and W.B.'s deaths;
(4) Taylor's negligence was the proximate cause of the crash;
(5) Taylor, as a member of the Ohio National Guard, was returning home from a training exercise and, thus, the United States is liable under the FTCA for Taylor's negligence in operating the HMMWV; and
(6) The United States cannot show that the accident was proximately caused by the negligence of a third, unnamed party.

Ohio Rev. Code § 4511.25(A) required Taylor to drive the HMMWV on the right side of the road and not to cross the centerline except under limited circumstances not present here:

(A) Upon all roadways of sufficient width, a vehicle or trackless trolley shall be driven upon the right half of the roadway, except as follows:

(1) When overtaking and passing another vehicle proceeding in the same direction, or when making a left turn under the rules governing such movements;
(2) When an obstruction exists making it necessary to drive to the left of the center of the highway; provided, any person so doing shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;
(3) When driving upon a roadway divided into three or more marked lanes for traffic under the rules applicable thereon;
(4) When driving upon a roadway designated and posted with signs for one-way traffic;
(5) When otherwise directed by a police officer or traffic control device.

---

[6] Mot. at 668-69. (Page number references are to page identification numbers generated by the Court's electronic filing system.)

5

Plaintiffs also claim that Taylor violated Ohio Rev. Code § 4511.202(A), which required him to maintain reasonable control over the HMWVV he was driving:

> (A) No person shall operate a motor vehicle, trackless trolley, streetcar, agricultural tractor, or agricultural tractor that is towing, pulling, or otherwise drawing a unit of farm machinery on any street, highway, or property open to the public for vehicular traffic without being in reasonable control of the vehicle, trolley, streetcar, agricultural tractor, or unit of farm machinery.

On summary judgment, plaintiffs maintain that Taylor's violations of these Ohio Revised Code sections "are excused only if the United States can demonstrate that Taylor was forced left of center as a result of a sudden emergency beyond his control," which plaintiffs argue was not present on September 10, 2016. (Mem. at 682.)

**D. Sudden Emergency**

"In Ohio, it is a well settled principle of law that violation of a specific safety statute, absent a showing of some legal excuse for failure to comply with the conduct required by the statute, constitutes negligence per se." *Zehe v. Falkner*, 271 N.E.2d 276, 278 (Ohio 1971) (citing *Spalding v. Waxler*, 205 N.E.2d 890 (Ohio 1965); *Oechsle v. Hart*, 231 N.E.2d 306 (Ohio 1965)). "Any unexcused failure to comply with these [public safety] standards constitutes negligence per se … and the burden of proving the legal excuse rests upon the one who has violated the statute." *Nomic v. Pettry*, 288 N.E.2d 831, 834 (Ohio Ct. App. 1972) (citing *Spalding*).

A "sudden emergency" is one such legal excuse. (*See* Mot. t 683; Opp. at 1150.) "'The general rule is that one who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence.'" *Fitas v. Estate of Baldridge*, 657 N.E.2d 323, 326 (Ohio Ct. App. 1995) (quoting *Scott v. Marshall*, 105 N.E.2d 281 (Ohio Ct. App. 1951)). "'In a negligence

6

action, the so-called 'emergency doctrine' applies only where there was a sudden and unexpected occurrence of a transitory nature which demanded immediate action without time for reflection or deliberation and does not comprehend a static condition which lasted over a period of time.'" *Mapes v. Opper*, 458 N.E.2d 892, 894 (Ohio Ct. App. 1983) (quoting *Miller v. McAllister*, 160 N.E.2d 231, 233 (Ohio 1959)). "An operator of a motor vehicle who has failed to comply with a safety statute regulating the operation of motor vehicles may excuse such failure and avoid the legal imputation of negligence arising therefrom by establishing that, without his fault and because of circumstances over which he had no control, compliance with … the statute was rendered impossible." *Satterthwaite v. Morgan*, 48 N.E.2d 653, 656 (Ohio 1943) (citing *Kormos v. Cleveland Retail Credit Men's Co.*, 3 N.E.2d 427 (Ohio 1936)).

> A party asserting the sudden emergency defense must establish that:[7]
>
> (1) compliance with a specific safety statute was rendered impossible, (2) by a sudden emergency, (3) that arose without the fault of the party asserting the excuse, (4) because of circumstances over which the party asserting the excuse had no control, and (5) the party asserting the excuse exercised such care as a reasonably prudent person would have under the circumstances.

*Steffy v. Blevins*, No. 02AP-1278, 2003 WL 22846095, at *6 (Ohio Ct. App. Dec. 2, 2003) (citing *Bush v. Harvey Transfer Co.*, 67 N.E.2d 851, 855-56 (Ohio 1946)).

### E. Analysis

The principal issue on summary judgment, and the focus of the parties' briefs, is whether Taylor's non-compliance with Ohio Rev. Code § 4511.25 and § 4511.202 was excused by a sudden emergency. Since the focus of the parties' arguments on the issue of sudden emergency is a school

---

[7] The parties agree on the standard for establishing a sudden emergency under Ohio law. (*See* Mem. at 683-84 (citing among authority *Millard v. CSX Transp., Inc.*, No. 97APE05-717, 1998 WL 63546, fn. 1 (Ohio Ct. App. Feb. 10, 1998) (citing Ohio Jury Instructions, Section 7.18(2))); Opp. at 1153 (citing *Steffy*).)

7

bus, a brief description of the events involving the school bus is helpful to understanding the parties' arguments and the Court's analysis.

**Events leading up to the accident**

The events at issue occurred when Taylor and other Ohio National Guardsman were returning to Camp Ravenna after training at Camp Perry and the basic facts of those events are not in dispute.[8] Taylor was driving a HMMWV and another guardsman, Cole Bright, was in the passenger seat acting as Taylor's assistant driver. (Mem. at 677, 694; Opp. at 1142.) Guardsman Gaiters was sitting in the back seat directly behind Taylor and guardsman Ibarra was sitting in the back seat behind Bright.

The HMMWV Taylor was driving was part of a three-vehicle convoy. The lead vehicle was a non-military pickup truck followed by two National Guard HMMWV's. Taylor's was the third and last vehicle in the convoy. (*See* Mem. at 677; Opp. at 1141.) Shortly before the accident, the convoy was traveling south on State Route 14 in Ravenna and both northbound and southbound directions of travel consist of two lanes. (Mem. at 677; Opp. at 1141.) As the convoy traveled toward the Lake Rockwell intersection on State Route 14, a school bus was traveling in the right southbound lane and the first two vehicles of the convoy moved past the school bus in the left southbound lane. (Mem. at 678; Opp. at 1141-42.) As southbound vehicles approach the Lake Rockwell intersection, there are two traffic signs informing motorists that the right southbound lane – the lane in which the school bus was traveling – was ending; the first sign was 745 feet from the intersection, and the second approximately 143 feet from the intersection. (Mem. at 678; Opp. at 1143.)

---

[8] Where basic facts are not in disagreement, the Court cites to the parties' briefing relying on the parties' citations to the record.

8

Taylor's assistant driver called the school bus in the right lane to Taylor's attention, and Taylor knew the school bus needed to merge because he had observed the first traffic sign informing motorists that the right lane was ending. (Mem. at 678; Opp. at 1143.) When Taylor reached the second sign, he was traveling in the left southbound lane and the school bus was next to him in the right lane. (Mem. at 678; Opp. at 1144.) Taylor recognized that the bus needed to merge and slowed down. (Mem. at 678-79; Opp. at 1144.) But when the bus entered the left lane in front of the HMMWV, Taylor felt that it wasn't more than ten feet away from the front of the HMMWV and he braked to avoid hitting the bus. (Mem. at 679; Opp. at 1146.) It is unclear whether Taylor steered left across the center line into the northbound lanes or lost control of the HMMWV before the vehicle crossed the centerline. (Mem. at 682; Opp. at 1146.)

**The existence of a sudden emergency is an issue for the factfinder**

Plaintiffs contend that the defendant has failed to present evidence that the actions of the school bus moving into Taylor's lane constituted a sudden emergency, thus entitling them to summary judgment on that issue. (Mem. at 686.) Specifically, plaintiffs argue that Taylor was aware of the school bus and knew that the bus needed to merge into the left lane. Taylor testified that he "knew that something wasn't right because the bus was still next to me in the lane that was merging into the left side." Taylor reduced his speed and the bus advanced ahead of him in the right lane then merged into the left lane. While Taylor perceived that the bus was no more than ten feet ahead of him when it merged left into his lane and he feared that the back of the bus would hit the side of the HMMWV, prompting him to break and steer left, plaintiffs maintain that the bus's

9

actions were neither sudden nor emergent nor were the circumstances beyond Taylor's control. (Mem. at 687-89).[9]

Defendant argues in opposition that while Taylor was aware of the bus and knew it ultimately needed to merge left, the bus abruptly and unexpectedly swerved into Taylor's lane creating a sudden occurrence that required Taylor to react without time for reflection or deliberation. (Opp. at 1153-54.) Taylor and the occupants of the HMMWV testified that the bus abruptly swerved left and forced its way into Taylor's lane almost hitting the HMMWV. (Doc. No. 53-3 (Deposition of Christian Gaiters ["Gaiters Dep."]) at 1184 (it looked like "the bus was trying to beat the traffic, turning left, and then that's when I saw the bus merging in – onto the Humvee … [the bus] almost hit us."); Doc. No. 53-7 (Deposition of Jeremy Taylor ["Taylor Dep."]) at 1364, 1371, 1376-77, 1386 (the bus forced its way into the convoy into a car-size versus a bus-size gap and Taylor thought the bus was not more than ten feet from the front of the HMMWV and he was going to hit the bus); Doc. No. 53-9 (Deposition of Christian Ibarra ["Ibarra Dep."]) at 1402-03 (estimating the back of the bus to be about ten feet in front of the HMMWV); Doc. No. 53-6 (Deposition of Joshua Boey ["Boey Dep."]) at 1306, 1335 (surprised the bus was trying to get into the space in front of Taylor's HMMWV and the bus driver was being a "jerk" trying to get in there)). Taylor testified that the bus unexpectedly "swung in" to his lane and he made the "instant decision" to "hit the brakes" to avoid a collision with the bus, ultimately crossing the centerline and striking the KIA. (Taylor Dep. at 1376, 1385-86.) A member of the convoy

---

[9] In support, plaintiffs cite *Orr v. Zeff*, No. C-790022, 1980 WL 352761 (Ohio Ct. App. Mar. 26, 1980). In *Orr*, plaintiffs were traveling in the most left-hand lane of a four-lane expressway. Zeff was driving in the same direction in the most right-hand lane of the expressway. A third vehicle entered the expressway from a merging entrance on the left and proceeded across the expressway into the right-hand lane in front of Zeff. Zeff braked and skidded across four-lanes of traffic and crashed into the side of Orr's car. *Orr*, 1980 WL 352761, at *1. Zeff's violation of the Ohio Rev. Code § 4511.33(A) constituted negligence per se "unless her actions can be excused by reason of the occurrence of a 'sudden emergency.'" *Id*. The trial court entered judgment for Zeff on the grounds that her violation of the statute was so excused. *Id*. But the appellate court remanded the case for a new trial on grounds that the "manifest weight of evidence in the record contradicts a conclusion that the collision occurred without Zeff's fault because of circumstances over which she had no control." *Id*.

testified that after merging in front of Taylor's HMMWV, the driver stopped the bus and walked around to the left side of the bus, "looked at the paint," and then drove off. (Doc. No. 53-4 (Deposition of Mark Dean ["Dean Dep."]) at 1241.) In his report, defendant's expert Alan Lynch states that a typical lane change takes 3 to 4 seconds, but the engineering analysis of the accident indicates that the bus merged into the left lane in 1.2-1.5 seconds. (Doc. No. 53-11 (Report of Alan Lynch ["Lynch Report"]) at 1455, 1462.) Lynch opines that there was sufficient lane width ahead of the bus to allow for a gradual merge, and the abrupt merge left in front of Taylor's HMMWV without yielding or signaling violated public safety laws and presented a sudden and unexpected emergency. (*Id.* at 1456 ("The analysis indicates that the bus abruptly moved from the right to the left lane."), 1470.)

In reply, plaintiffs argue that the testimony of the guardsmen regarding the distance between the bus and the HMMWV when it merged is self-serving and contradicted by physical evidence indicating that the bus had sufficient room to merge in front of Taylor's HMMWV. (Reply at 1676.) But even so, plaintiffs acknowledge that liability remains in dispute and frames the issues as follows:

(1) was the bus driver required to yield to Taylor's vehicle;
(2) assuming the bus driver had a duty to yield, did his actions present a sudden emergency excusing Taylor's compliance with Ohio Rev. §§ 4511.25 and 4511.202;
(3) if the bus presented a sudden emergency, was Taylor nevertheless negligent in response to the emergency; and
(4) what is or are the proximate cause or causes of the crash.

(*Id.* at 1678.)

On summary judgment, the Court must construe the facts in a light most favorable to the non-moving party. A party seeking summary judgment on the issue of sudden emergency faces a "heavy burden" because the issue of whether a defendant acted as a reasonably prudent person under the same circumstances is a question for the factfinder. *Timberlake v. Jennings*, No. 04AP-

462, 2005 WL 1252400, at *5 (Ohio Ct. App. May 26, 2005) (citing among authority *Satterthwaite*, 48 N.E.2d at 656). "The question in such case is, not what a careful person would do under ordinary circumstances, but what would he be likely to do, or might reasonably be expected to do, in the presence of such existing peril, and is one of fact for the jury." *Pennsylvania R. Co. v. Snyder*, 45 N.E. 559, 563 (Ohio 1896).

Here, the evidence advanced by the parties on summary judgment is such that a factfinder could reasonably decide in favor of either party on the issue of whether defendant has satisfied each element of the sudden emergency defense. Accordingly, defendant's liability is properly determined by a factfinder after hearing all the evidence and is not appropriate for summary judgment. *See Satterthwaite*, 48 N.E.2d at 653-54 (reversing directed verdict for plaintiff that defendant was negligent as a matter of law where taxicab pulled out from the curb in front of him and suddenly stopped causing defendant to stop to avoid a collision with the taxi and skid left colliding with plaintiff's car and remanding, holding that the "[w]hen a defendant offers evidence of facts from which it may be inferred that his violation of such legal requirement was due to the existence of a sudden emergency arising without his fault, the questions of his liability in the premises, and of the proximate cause of the injury resulting from such violation, are for the jury."); *see also Cole v. Beallor*, No. 1999CA00080, 2000 WL 1687, at *4 (Ohio Ct. App. Dec. 30, 1999) (denying appeal by Cole that the trial court erroneously instructed the jury on the sudden emergency doctrine and upholding the verdict in favor of Beallor where plaintiff's vehicle abruptly veered into defendant's lane and was struck by defendant, on the grounds that Beallor's "portrayal of the collision suggests that [Cole's] actions … created what could reasonably be labelled as an overlapping sudden entrance and sudden emergency condition"); *Radecki v. Lammer,* 238 N.E.2d 545, 547-48 (Ohio 1968) (reversing court of appeals and affirming trial court judgment for defendant where plaintiff challenged whether there was sufficient evidence to warrant an

instruction to the jury on sudden emergency finding that "[i]t was within the province of the jury to determine whether the facts and circumstances confronting the plaintiff and the defendant created a 'sudden emergency'" and whether "the conduct of the defendant was that of a reasonably prudent man under the same or similar circumstances" where a truck driver collided with a child on a bicycle as the driver entered a filling station) (citations omitted); *Stutz v. LaForest*, 886, 615 N.E.2d 1129, 1131 (Ohio Ct. App. 1992) (reversing and remanding trial court's directed verdict in car accident case, finding that where reasonable minds could come to more than one conclusion on the evidence with respect to who was negligent and whether a sudden emergency existed, the trial court erred by removing the case from the jury's consideration).

## III. CONCLUSION

Plaintiffs seek summary judgment on six specific issues all of which, except for issue 3,[10] touch on the issue of Taylor's alleged negligence and the issue of sudden emergency:

(1) Taylor was negligent per se under Ohio Rev. Code § 4511.25(A) and § 4511.202(A) in driving left of center and failing to maintain control over the HMMWV he was operating, respectively;
(2) Taylor's violations of the above-listed statutory provisions are not excused by a sudden emergency;
(3) The crash was the direct cause of Bargar's and W.B.'s deaths;
(4) Taylor's negligence was the proximate cause of the crash;
(5) Taylor, as a member of the Ohio National Guard, was returning home from a training exercise and, thus, the United States is liable under the FTCA for Taylor's negligence in operating the HMMWV; and
(6) The United States cannot show that the accident was proximately caused by the negligence of a third, unnamed party.

For the reasons contained herein, plaintiffs' motion for summary judgment is denied.

(Bentley Case Doc. No. 62; Snyder Case Doc. No. 46.)

This case remains scheduled for trial on December 7, 2020.

**IT IS SO ORDERED**.

Dated: November 9, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[10] The Court's decision to deny summary judgment on the issue of Taylor's negligence and defendant's liability renders a decision concerning the issue of causation premature and, moreover, is an issue that may be addressed by the parties in the form of a stipulation.